[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14924
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-01637-LMM

DOROTHY BINNS,

Plaintiff-Counter Defendant-Appellant,

versus

THE CITY OF MARIETTA GEORGIA,
(Housing Choice Voucher Program),

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 3, 2017)

Before MARCUS, WILSON, and MARTIN, Circuit Judges.

PER CURIAM:

Dorothy Binns, proceeding pro se, appeals the district court's grant of

summary judgment in favor of the City of Marietta on her claims under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the Rehabilitation Act ("RA"), 29 U.S.C. § 701, and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, as well as her due process, disparate impact, retaliation, harassment, and conspiracy claims.  She also appeals the district court's denial of her motion for leave to file untimely summary judgment briefing.  After careful review, we affirm.

## I.

## A.

Dorothy Binns participated in the City's Section 8 Housing Choice Voucher Program, which the City administered on behalf of the U.S. Department of Housing and Urban Development.  In 2006, Binns sued the City for refusing to grant her a voucher separate from the one she held for her son.  As a result of that litigation, the City agreed to give Binns a voucher.  When Binns applied for her voucher, she listed herself and her son as the household members and also requested that the City approve a live-in aide as a reasonable accommodation for her rheumatoid arthritis.  The City approved her request for a live-in aide and granted her a two-bedroom subsidy based on her three-person household (herself, her son, and the live-in aide).

In 2012, Binns requested that the City remove her son from her "Household Composition."  After removing her son, the City reduced her subsidy to a one-

2

bedroom unit, as the subsidy was now based on a two-person household (Binns and her live-in aide). Binns then filed a request for a reasonable accommodation, seeking an additional subsidy for a separate room for her live-in aide. The City denied her request. Binns appealed the decision, but the City's hearing officer affirmed the denial of the additional subsidy.

Binns also submitted a request for a "hardship exemption" to the minimum rent requirement. The City denied that request too.

## B.

In May 2013, Binns filed this suit pro se against the City. Her complaint alleged a number of different claims. First, Binns alleged the City violated her rights under the ADA, the RA, and the FHA by denying her request for a reasonable accommodation of a larger housing subsidy. Second, she alleged the City violated her right to due process by not giving her an opportunity to appeal its denial of her request for a hardship exemption to the minimum rent requirement. Third, she alleged the City's refusal to grant a larger subsidy to people with live-in aides caused a disparate impact on elderly and disabled participants in the Voucher Program. Finally, she alleged the City's actions were the result of retaliation, harassment, and conspiracy.

3

The parties filed cross motions for summary judgment.  The district court granted the City's motion for summary judgment and denied Binns's.  Binns timely appealed.

## II.

We review <u>de novo</u> the district court's grant or denial of summary judgment, viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party.  <u>Rioux v. City of Atlanta</u>, 520 F.3d 1269, 1274 (11th Cir. 2008).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

## III.

## A.

First, Binns argues the district court erred in granting summary judgment in favor of the City on her claims under the ADA, RA, and FHA.  We conclude to the contrary.

To begin, Binns states that the City violated her rights under the ADA and RA, but does not address the substance of those claims in her brief.  Neither did she address them before the district court.  Therefore, she has abandoned her claims under the ADA and RA.  <u>See</u> <u>Timson v. Sampson</u>, 518 F.3d 870, 874 (11th

4

Cir. 2008) (per curiam) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (citations omitted)).

Binns focuses solely on her reasonable accommodation claim under the FHA. She claims the City failed to reasonably accommodate her when it denied her a subsidy for an additional bedroom for her live-in aide. The district court rejected this claim. The court found the City's denial of Binns's request for a larger subsidy did not amount to a failure to provide a reasonable accommodation because the City's actions were consistent with the relevant federal regulations. The district court was right.

To prevail on a reasonable accommodation claim under the FHA, the plaintiff "must prove that (1) [s]he is disabled within the meaning of the FHA, (2) [s]he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford [her] an opportunity to use and enjoy [her] dwelling, and (4) the defendants refused to make the accommodation." Bhogaita v. Altamonte Heights Condo. Ass'n, 765 F.3d 1277, 1285 (11th Cir. 2014). Here, Binns failed to show that her requested accommodation was reasonable, as her request was contrary to what the federal regulations require Public Housing Agencies, such as the City, to provide.

5

Under the applicable federal regulations, "[a]ny live-in aide . . . must be counted in determining the family unit size."  24 C.F.R. § 982.402(b)(6).  However, the regulations do not require the Public Housing Agency to provide a separate bedroom for a live-in aide.  Rather, the regulations say the "dwelling unit must have at least one bedroom or living/sleeping room for each two persons."  Id. § 982.401(d)(2)(ii) (emphasis added).  Thus, as the district court said, "[w]hen determining a subsidy for a two-person household, the regulations only require one bedroom, even when one of the occupants is a live-in aide."  Binns asserts that these federal regulations do not apply to voucher recipients who are disabled, such as herself.  However, she cites no authority for that proposition, and we have found none to support it.  Because Binns asked for a larger subsidy than § 982.401(d)(2)(ii) provides, we conclude her proposed accommodation was not reasonable.  The City was therefore entitled to summary judgment on Binns's failure-to-accommodate claim.  See Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (per curiam) ("Under the Fair Housing Act, plaintiffs have the burden of proving that a proposed accommodation is reasonable.").

### B.

Second, Binns argues the district court erred in granting the City summary judgment on her due process claim.  Binns alleged that the City violated her right to due process by not giving her a chance to appeal its denial of her request for a

6

hardship exemption to the minimum rent requirement.  We conclude the district court correctly granted summary judgment to the City on this claim.

The Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  However, not all property interests trigger due process protection.  See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570, 92 S. Ct. 2701, 2705 (1972) ("[T]he range of interests protected by procedural due process is not infinite.").  When a plaintiff alleges the violation of due process in the context of the denial of a government benefit, the plaintiff must first show a "protected property interest in [the] government benefit."  Barnes v. Zaccari, 669 F.3d 1295, 1303 (11th Cir. 2012).  To do that, the plaintiff must show she has "a legitimate claim of entitlement to" the benefit.  Roth, 408 U.S. at 577, 92 S. Ct. at 2709.  Binns has failed to make that showing.  More specifically, the benefit Binns sought was a hardship exemption to the minimum rent requirement, but Binns failed to show she was subject to the minimum rent requirement in the first place.

The minimum rent requirement does not apply to all recipients of Section 8 vouchers.  Rather, all recipients must make a "total tenant payment," and the "minimum rent" requirement is the way that some recipients satisfy the "total tenant payment" obligation.  24 C.F.R. § 5.628(a).  A recipient's "total tenant payment" is the greater of: 30% of her monthly adjusted income, 10% of monthly

7

gross income, or the "minimum rent," which in Marietta is $50. See id.; Doc. 54 at 15. The City calculated Binns's monthly adjusted income at $627, 30% of which is $188, and her monthly gross income at $659, 10% of which is $66. Because both of these amounts are greater than $50, the City determined Binns was not eligible for the minimum rent. Binns did not dispute this determination before the district court.[1] Because she did not pay the minimum rent in the first place, she cannot show "a legitimate claim of entitlement to" an exemption from the minimum rent. See Roth, 408 U.S. at 577, 92 S. Ct. at 2709. Binns has thus failed to show a protected property interest in the government benefit she sought. See Barnes, 669 F.3d at 1303. And without a protected property interest, she cannot prevail on her due process claim. Id. The district court was therefore correct to grant the City summary judgment on this claim.

## C.

Third, Binns argues the district court erred in granting summary judgment in favor of the City on her disparate impact claim.[2] Binns says the City's policy of

---

[1] For the first time on appeal, Binns argues the City miscalculated her "total tenant payment" obligation and that she should have qualified for the minimum rent. However, "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation omitted).

[2] The district court said it was not clear from Binns's pleadings whether she wished to bring a claim for disparate treatment in addition to the claim for disparate impact. The court addressed the disparate treatment claim anyway, and found the City was entitled to summary judgment on that claim as well. On appeal, Binns provides no substantive argument on the

not subsidizing an extra room for a live-in aide causes a disparate impact on elderly and disabled participants in the Voucher Program. The district court was right to grant summary judgment to the City on this claim.

A disparate impact claim under the FHA "challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale." Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 576 U.S. ___, 135 S. Ct. 2507, 2513 (2015) (quotation omitted). "Typically, a disparate impact is demonstrated by statistics." Hallmark Developers, Inc. v. Fulton Cty., 466 F.3d 1276, 1286 (11th Cir. 2006). Binns has provided no comparative data, statistical or otherwise, to show that elderly and disabled participants are disproportionately impacted by the City's policy of granting only a one-bedroom subsidy for a two-person household. She says the policy forces people who need live-in aides to sacrifice "the peace and enjoyment of [their] living room space" because the City will not subsidize a separate bedroom for the live-in aide. Yet anyone living in a two-person household will be granted only a one-bedroom subsidy, regardless of whether the second person is a live-in aide. Binns has not shown that non-disabled or non-elderly participants who have a two-person household are any less likely to have to sacrifice their

---

disparate treatment claim. Therefore, we will not address that claim further. See Timson, 518 F.3d at 874.

9

living room space.  Because Binns did not "present [the] relevant comparative evidence," the district court was right to reject her disparate impact claim.  See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218 (11th Cir. 2008).

D.

Fourth, Binns argues the district court erred in granting the City summary judgment on her claims for retaliation, harassment, and conspiracy.  This argument fails.

It is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right protected under the FHA.  42 U.S.C. § 3617.  Binns alleged that the City's actions—denying her request for a larger subsidy and denying her request for a hardship exemption—constituted retaliation, harassment, and conspiracy.  However, Binns has provided no evidence that the City's adverse decisions were motivated by an intent to retaliate against her or to harass her.  Cf. Sofarelli v. Pinellas Cty., 931 F.2d 718, 722 (11th Cir. 1991) (holding that plaintiff stated a claim under § 3617 where defendant left plaintiff "a note threatening 'to break [plaintiff] in half' if he did not get out of the neighborhood" and had "run[] up to one of [plaintiff]'s trucks, hitting it, shouting obscenities and spitting at [plaintiff]").  Neither has Binns presented any evidence of a conspiracy.  Because Binns has not provided factual support for her allegations, the City was entitled to summary judgment on her claims for

10

retaliation, harassment, and conspiracy.  See Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

E.

Finally, Binns appeals the district court's denial of her motions for leave to supplement her summary judgment briefs after the briefing deadline had passed. We review for an abuse of discretion the district court's denial of a motion for extension of time.[3]  Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004).  Binns filed her motions after the district court had already granted her a number of extensions of the deadline for summary judgment briefing and made it clear that no further extensions would be granted.  This record reflects no abuse of discretion by the district court in denying Binns's motions for leave to file untimely briefing.  See id. at 864 (concluding that the district court did not abuse its discretion in denying a fifth motion for extension of time where the court had already "granted four extensions of time[,] one of which was granted after a warning that no further extensions would be granted").

**AFFIRMED.**

---

[3] Although Binns styled her motions as "Motion for Leave to File Surreply" and "Motion to Amend," the district court treated them as motions for extension of time because they were filed after the period for filing summary judgment briefs had closed.